# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LANCEY DARNELL RAY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CIV-15-306-R |
| ) | |
| TRACY McCOLLUM, Warden, ) | |
| ) | |
| ) | |
| Respondent. ) | |

## ORDER

Petitioner, a state prisoner appearing *pro se*, filed this action pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus. Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the matter was referred to United States Magistrate Judge Bernard Jones for preliminary review. On March 21, 2017, Judge Jones issued a Report and Recommendation wherein he recommended the Court deny the Petition. The matter is currently before the Court on Petitioner's timely objection to the Report and Recommendation, which gives rise to the Court's obligation to conduct a *de novo* review of those portions of the Report and Recommendation to which Petitioner makes specific objection. Having conducted this *de novo* review, the Court finds as follows.

Petitioner was convicted in the District Court of Comanche County on a single count of murder, the jury concluding that Petitioner, in administering what he considered appropriate discipline to his ten-year old stepson, caused injuries that resulted in Malik Ray's death. The District Court of Comanche County sentenced Petitioner to life imprisonment. He contends that errors in the course of the trial rendered his conviction

unconstitutional. The Magistrate Judge considered each of the claims and concluded they lacked merit under the relevant standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). That is, Petitioner is not entitled to relief on any claim addressed by the Oklahoma Court of Criminal Appeals unless its decision was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented.

Petitioner contends throughout his briefing that the Oklahoma Court of Criminal Appeals did not actually address the issues, because the orders affirming Petitioner's conviction and denying his request for post-conviction relief do not sufficiently explain the court's reasoning. As a result, he contends the Court should not apply AEDPA deference to the Oklahoma Court of Criminal Appeals' rejection of his various claims. As noted by Judge Jones in the Report and Recommendation, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted). This Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).[1]

---

[1] Petitioner complains in his objection that the District Court of Comanche County failed to make findings of fact and conclusions of law in compliance with Rule 5.4(A), Rules of the Court of Criminal Appeals. This failure is solely an issue of State law and focuses only on the State's post-conviction remedy, not the judgment that provides

2

With the standard in mind, the Court turns to Petitioner's objections to the Report and Recommendation.

In Ground One Petitioner argues the medical examiner's opinion did not comply with the Federal Rules of Evidence nor the Oklahoma Rules of Evidence, which therefore denied him the equal protection of the laws. He argues:

> Pertaining to the question of quantitative analysis or any kind of test to determine blood and fluid lost into tissues, the Reynolds Army Community Hospital Emergency Room Physician (RACH) (ER) testified, "once we gave blood, there's no way to know what it was after that point." (Prelim. Hearing Tr. 33 lines 22-25; 34 lines 9-10).
> Pertaining to the question of "were you told how much additional blood or how many additional fluids Malik was given as part of his treatment?" The Medical Examiner testified, "No Sir." (Tr. III 72 Lines 14-16). The RACH ER Medical Records –Progress Notes reveals a total of 1400ccs of Normal Saline in addition to the two units (2x500 mls bags) of packed red blood cells were given – to a patient with "no lacerations or breaks in this skin" (Prelim H. Tr. 27 line 19). Nonetheless, the M.E. testified "those injuries [bruises] they were associated with blood loss in tissues. . ." (Tr. III 61 Lines 19-20).

Petition, p. 6. This issue was not raised on direct appeal, which Petitioner blames on the ineffective assistance of appellate counsel. The Report and Recommendation recommends denial of the claim because it lacks merit. In his objection Petitioner contends the Magistrate Judge misconstrues his claim and attempts to clarify same, arguing that the emergency room physician who first treated Malik committed malpractice which resulted in the improper administration of blood and saline, which resulted in the hemorrhaging identified by the Medical Examiner. Although Petitioner premised the argument in his

---

the basis for his incarceration. As such, it does not provide a basis for granting the instant petition or denying AEDPA deference to the Oklahoma Court of Criminal Appeals' conclusions. *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir.1998).

Petition on the fact that Dr. Yacoub, the medical examiner, was not told about the administration of blood and fluids during his emergency treatment, his contention is apparently that Malik was suffering from neurogenic shock, not hypovolemic shock. Because his shock was not caused by insufficient blood to fill the circulatory system, Petitioner contends the blood and saline administered were detrimental to Malik's health.

There is no trial testimony regarding the type of shock for which Malik was treated. The following testimony by the treating physician, however, supports the State's theory that Malik's death was the result of the discipline inflicted by Petitioner.

> Q: How did Malik appear to you other than not having a heart rate, did you see any physical signs?
> A: Well, there was extensive bruising throughout the body, both arms, both legs, his chest. There was a bruise on his forehead. And it was so severe that we were –we asked what had happened to him, was he hit by a car, and that was when the defendant, Mr. Ray, stated that he had whipped him.

Tr. Vol. I, p. 243-44.

> Q: When you were putting the fluids into his shins, why were you doing that?
> A: Well, the appearance of him with the multiple bruisings made him a trauma patient. My concern initially was I have to address what I believe is the cause for what's going on. And so we started infusing fluids to try to re-expand his blood volume. We gave him normal saline which is a fluid very similar to the electrolyte content of the body. And then as soon as it was available, we infused two units of red blood cells. Shortly after the two units of red blood cells were infused into him that he got a heartbeat. That was about, one document said 45, but I remember being more like 60 minutes into resuscitation.

Tr. Vol. I, p. 247-48.

> Q: Well, why were you giving him blood?
> A: Well, there was just so much bruising that when you looked at - - when you assess a patient and you try to figure out why they're in the state they're in, you take the visual cues and the historical information that's provided to you by the parents or in this case by the parents and any other people that are

4

around to contribute to what's going on. And clearly this child had trauma. There was – - I said earlier that I've been in emergency medical services since 1979. Part of that time, I picked up bodies for the medical examiner in Oklahoma County, and in the 30-plus years of emergency medical services, I have never seen a child as bruised as this child was.

Tr. Vol. I, p. 250-51.[2] Dr. Ware noted that "The other things that can play into it again is that his blood volume appeared to be so low that all the medicines we were giving him didn't work but after two liters of blood or two units of blood were given, he got a heartbeat. So that tells me we were giving him enough blood to generate a heartbeat from the heart while we never had any neurological response. So again, once we fill up the tank, so to speak, with fluid, there is now blood to come out of that tank and to go into the other areas." Tr. Vol. I, p. 258.

Dr. Daniel Tolson who also treated Malik in the emergency department testified about the bruises throughout the body. Tr. Vol. II, p. 47. He further testified, "[i]n this case, it was my impression that he was in shock due to blood loss in the tissues of his body." Tr. Vol. II, p. 57.

> Q: And you can have blood loss by bleeding into - - that's the muscles, right?
> A: Muscles are also included in that. People think about blood loss as having a vessel cut and blood coming out, but you can - - with bruises to your body, blood is leaking out of your blood vessels even though it may not be a large cut there but just because of the damage they get from the crushing that occurs, blood will leak out of the vessels into the surrounding tissues.

*Id.*

> Q: But basically a bruise is just the tearing of the flesh underneath the skin?
> A: Right.

---

[2] Physician's Assistant Hope King offered treatment to Malik King the evening of December 22, 2010 and testified that she has never seen such extensive bruising in a patient, causing her to inquire whether he had been hit by a vehicle. Tr. Vol. II, p. 11, 15 ("I thought Malik had been possibly hit by a car due to the extensive nature of his bruising and it appeared that he had multiple traumas.").

5

*Id.*, p. 58.

> Q: I think counsel asked you while ago would one of these injuries cause - - basically cause death?
> A: Well, one by itself would not but the combination of the bruising he had could cause someone to like I had said before, lose enough blood to go into cardiac arrest.
> Q: That's basically why Malik died, isn't it?
> A: Yes.
> Q: Multiple blunt force trauma?
> A: That's right.

Tr. Vol. II, p. 79. Nothing Petitioner offers in his argument counters the evidence submitted at trial. The medical examiner opined that the cause of death was the "multiplicity of injuries and that extent of the injuries that caused him to bleed so much in his soft tissues that pushed him over the edge." Transcript Vol. III, p. 36.

> So all I can say is the injuries were multiple, they were extensive, they were severe, they were associated with blood loss in tissues and that blood loss, if it is not replaced and the reason for the blood loss corrected, that person is going to go into shock and if this shock is not treated in time, it's going to be irreversible and the person would die.
> So the mechanism is hard for me to definitely point out, but I can offer that probably the blood loss that was extensive caused him to die from his injuries.

*Id.* at p. 61-62. In light of the above testimony from the treating doctor's, Petitioner's contention that the medical examiner could not opine that the loss of blood caused Malik's death is without merit. Furthermore, Petitioner does not challenge the testimony of the treating physicians that is consistent with the medical examiner's conclusions. Petitioner's speculation that Malik's actual medical condition did not require blood or saline and that his death was the result of aspiration because of his earlier vomiting is unsupported by the record and counsel's failure to raise the issue on direct appeal, by not attacking the

6

testimony of the medical examiner, was neither deficient nor prejudicial as required by *Strickland* to support Petitioner's claim for relief. Given the weight of the evidence against him, and the highly speculative nature of the allegations made by Ray to support ineffectiveness, there was "no reasonable probability that, had counsel not committed the errors [Ray] now claims were committed, the outcome of the case would have been different." *Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999).

In Grounds Five and Seven Petitioner challenges the trial court's decision to admit photographs of the victim taken after his death. Petitioner's contention with regard the photographs is tied to his contention that Malik's death was the result of aspiration not the whipping with the belt Petitioner admittedly inflicted on December 22, 2010. He contends the discoloration of the body was the result of cyanosis, not bruising, as testified to be the medical professionals. For the same reason Petitioner is not entitled to relief with regard to the testimony of the medical examiner and the speculative nature of the testimony Petitioner contends should have been presented he is not entitled to relief on Ground Five.[3] To the extent Petitioner contends the photographs were more prejudicial than probative in his Ground Seven, the Oklahoma Court of Criminal Appeals rejected this contention and Petitioner has failed to establish that this decision was contrary to or an unreasonable application of clearly established federal law.

In Ground Two Petitioner challenges the sufficiency of the evidence to support his conviction. The Report and Recommendation recommends denial of habeas relief on

---

[3] The treating physicians testified about the extent of the bruising when Malik was brought in, but also testified that the photographs depicted additional discoloration. There is no evidentiary support for Petitioner's theory of cyanosis.

7

Ground Two, noting that the evidence at trial, taken in the light most favorable to the prosecution, was sufficient to find Petitioner guilty of violating Okla. Stat. tit. 21 § 701.7(C).[4] Although Petitioner contends there was no evidence that he inflicted corporal punishment across Malik's forehead or ear, the evidence was that Petitioner admitted to whipping Malik. Malik's mother testified that she had imposed discipline on Malik that day by hitting his bottom with a board, and she was aware of the discipline imposed by Petitioner. The jury was called upon to draw conclusions regarding who inflicted which injuries and it concluded, as evidenced by the verdict, that Malik's death was the result of the unreasonable use of force by Petitioner. The Court does not sit as a super-appellate Court to reconsider the credibility determinations made by the jury. The Court concurs with Judge Jones that Petitioner's *Jackson* claim lacks merit.

In the Objection, Petitioner addresses his *Jackson* sufficiency of the evidence claim by asserting that trial counsel was constitutionally ineffective because he failed to request a lesser-included offense instructions. He contends the evidence supported the giving of

---

[4] Petitioner contends the jury could not find him guilty of violating § 701.7 without first finding that he violated Okla. Stat. tit. 21 § 843.5. Title 21 § 701.7 provides in pertinent part:

> A person commits murder in the first degree when the death of a child results from the willful or malicious injuring, torturing, maiming or using of unreasonable force by said person or who shall willfully cause, procure or permit any of said acts to be done upon the child pursuant to Section 843.5 of this title. It is sufficient for the crime of murder in the first degree that the person either willfully tortured or used unreasonable force upon the child or maliciously injured or maimed the child.

Section 701.7 and § 843.5 are essentially the same crime, except that conviction under § 701.7 requires the death of the victim, which occurred here. It is true that pursuant to *Workman v. State*, 824 P.2d 378, 383 (Okla.Crim.App. 1991), that the mens rea for § 701.7(C) is found in Okla.Stat. 21 § 843, which requires the defendant acted either "willfully" or "maliciously." *Id.* However, the State was not required to establish the spanking was done to willfully or maliciously injure Malik, its burden was only to prove that Petitioner intended to commit the act that caused the injury. *See Fairchild v. State*, 998 P.2d 611, 622-23 (Okla.Crim.App. 1999).

8

second degree manslaughter instructions. This issue was not sufficiently raised in the Petition or the amendment thereto. At page 8 of the Petition, at the end of his contention that the verdict was against the weight of the evidence, Petitioner states "Before closing arguments, District Court asked defense attorney, 'You're not going to ask for any lesser included?' Defense attorney stated 'No'." Tr. Vol. III, p. 88. [5] In his Amended Petition, Doc. No. 6, Petitioner supplemented his original claims, including the addition of ineffective assistance of counsel claims. Therein, however, he makes no reference to trial counsel's alleged failure to request lesser included offense instructions. The argument is addressed in Petitioner's Reply brief, setting forth arguments in a section entitled "Addendum," but not addressing the issue as one of counsel's ineffectiveness. (Doc. No. 29, pp. 19-20).

The Court concludes Petitioner failed to raise this issue in the instant Petition, and that by addressing it in his Reply brief, has waived the issue. *Compare United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 (10th Cir. 2013) ("[i]n civil cases ... a party waives an issue in the district court if he waits to raise the argument until his reply brief" and applying the rule to § 2255 motions)(internal quotation marks and citations omitted); *see also United States v. Harrell*, 642 F.3d 907, 918 (10th Cir.2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived."); *Thompkins v. McKune*, 433 Fed. Appx. 652, 660, 2011 WL 3555415, 6 (10th Cir.2011) ("[A]rguments raised for the first time in a traverse are not properly presented to the district court . . . ." (citations omitted)).[6]

---

[5] Petitioner omits the Court's response, "Okay, I don't think there's any reason for that." Tr. Vol. III, p. 88.
[6] To the extent Petitioner contends the trial court erred in failing to sua sponte instruct the jury on the lesser included offense of second degree manslaughter he fails to state a claim. There is no federal constitutional right to a lesser

9

In Ground Three Petitioner alleges the State failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Petitioner contends the State failed to produce a medical record proving that Malik had a femoral pulse six minutes after medical personnel initiated CPR. Judge Jones concluded that this information was immaterial and would not have provided a basis for impeaching the treating physician. As such, the failure to provide the single page did not violate Mr. Ray's constitutional rights. Nothing in Petitioner's objection leads the Court to believe that Dr. Ware's credibility could have been impeached by knowledge of the femoral artery pulse given the ultimate outcome of more than two hours of CPR. The Court hereby adopts the Report and Recommendation with regard to Ground Three.

In Ground Four Petitioner asserts that a variance between the Information and the evidence at trial deprived him of notice of the charges and the right to confront the witnesses against him. He identifies three specific examples, only two of which were exhausted before the Oklahoma Court of Criminal Appeals. Judge Jones concluded that Petitioner failed to establish that he was entitled to relief on any of the alleged variances, either because there was no variance, because the State filed an Amended Information prior to trial and because there was no variance between the information and the evidence. The undersigned concurs with his conclusion and accordingly, habeas corpus relief on this basis is unwarranted.

---

included offense instruction in a non-capital case. *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). This circuit applies a rule of "automatic non-reviewability" to "claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Id.* Petitioner therefore fails to assert a cognizable claim for habeas relief on this basis.

In Ground Six Petitioner challenges the trial court's failure to remove a juror. Nothing in Petitioner's objection convinces the Court that the Report and Recommendation is incorrect in its recommendation that Petitioner is not entitled to relief on this claim. The same holds true with regard to Ground Eight, Petitioner's claim of prosecutorial misconduct with regard to the State's closing argument, which Petitioner asserts inflamed the passion of the jury. The Oklahoma Court of Criminal Appeals denied the claim on direct appeal and the Report and Recommendation concludes this was not contrary to or an unreasonable application of federal law. The Report and Recommendation is adopted with regard to both Grounds Six and Eight.

Petitioner's Grounds Ten and Eleven assert that he was denied the effective assistance of counsel, both during trial and on direct appeal. To the extent Petitioner contends that on post-conviction the trial court did not examine the underlying issues that appellate counsel omitted, this Court's review is of the decision of the Oklahoma Court of Criminal Appeals. Furthermore, the Oklahoma Court of Criminal Appeals concluded the trial court had applied the appropriate *Strickland* standard. In denying Petitioner's application for post-conviction relief, the Oklahoma Court of Criminal Appeals stated, "[w]e set forth in *Logan* that that in reviewing a claim of ineffective assistance of appellate counsel under *Strickland*, a court must look to the merits of the issues that appellate counsel failed to raise. Only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient and also whether the failure to raise the omitted issue on appeal prejudiced the defendant; i.e., whether there is a reasonable probability that raising the omitted issue would have resulted in a different outcome in the

defendant's direct appeal." *Ray v. State*, Case No. PC 2014-1053 (Okla.Crim.App. Mar. 18, 2015).

Petitioner's trial counsel issues are directed at the merits of the claims raised in Grounds One, Two, Three, Four, and Five of the instant Petition, each of which was rejected above on the merits. Petitioner's ineffective assistance of appellate counsel claims argue that appellate counsel's failure to raise Grounds One through Five and Ten on direct appeal that he was denied the effective assistance of counsel. Each of Grounds One through Five has been rejected, and the failure to raise a meritless claim of ineffective assistance of trial counsel claim on direct appeal does not support an ineffective assistance of appellate counsel claim. As such, the Report and Recommendation is adopted with regard to Grounds Ten and Eleven as Petitioner has failed to establish that the Oklahoma Court of Criminal Appeals' conclusion that Petitioner failed to establish that counsel at trial or on direct appeal was constitutionally ineffective is contrary to or an unreasonable application of *Strickland*.

Finally, the Report and Recommendation recommended denial of Ground Nine of the Petition, wherein Petitioner alleged cumulative error. Judge Jones concluded, as did the Oklahoma Court of Criminal Appeals, that the absence of error precluded a finding of cumulative error. This conclusion is not contrary to or an unreasonable application of clearly established federal law, and therefore Petitioner is not entitled to relief with regard to this claim and the Report and Recommendation is adopted with regard to Ground Nine of the Petition.

For the reasons set forth herein, the Report and Recommendation is ADOPTED in its ENTIRETY. The Petition for Writ of Habeas Corpus is hereby DENIED. Judgment shall be entered in favor of Respondent. Petitioner's Motion for Evidentiary Hearing (Doc. No. 39) is hereby DENIED.

**IT IS SO ORDERED** this 3rd day of May 2017.

*[signature: David L. Russell]*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE